**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISON**

| | | |
|---|---|---|
| ROBERT RAY KRAMER, | ) | CASE NO. 3:17-CV-02181-JG |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES GWIN |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| WARDEN TOM SCHWEITZER, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

## I.      Introduction

Petitioner Robert Ray Kramer ("Kramer" or "Petitioner") filed this action seeking a writ of habeas corpus pursuant to 28 U.S.C. §2254. Respondent, Tom Schweitzer, is the Warden of the Lebanon Correctional Institution in Lebanon, Ohio. As Warden, Schweitzer maintained custody of Kramer pursuant to a judgment entry issued by the Defiance County, Ohio, Court of Common Pleas upon Kramer's conviction for involuntary manslaughter. (ECF No. 11-1 at Ex. 4, Case No. 14-CR-11927). Kramer was released from the Lebanon Correctional Institution on November 18, 2020, following an order for judicial release.[1] *See* Ohio Rev. Code § 2929.20 (Judicial release).

---

[1]  See  https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A716576,  last visited February 5, 2021. Because Kramer's petition attacks his conviction, his release from custody does not render his petition moot. *See Carafas v. LaVallee*, 391 U.S. 234, 237-38 (1968) (holding that the expiration of a petitioner's sentence and his subsequent release, before a judicial decision on his petition, does not moot the petition where collateral consequences of conviction exist); *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) ("Once the convict's sentence has expired, however, some concrete and continuing injury other than the now-ended incarceration or parole—some "collateral consequence" of the conviction—must exist if the suit is to be maintained."); *Gentry v. Deuth*, 456 F.3d 687, 694 (6th Cir. 2006) (holding that, where a habeas petition attacks the sentence rather than the conviction, the petition is almost always moot).

## II.     Procedural History

### A.  State Conviction

The following excerpt is taken from the direct appeal:

> This case stems from the heroin-overdose death of Jimmie Matney ("Matney"), to whom Kramer allegedly sold heroin shortly before Matney's death on December 27, 2013. (*See* Doc. Nos. 1, 27). On May 22, 2014, the Defiance County Grand Jury indicted Kramer on one count of involuntary manslaughter in violation of R.C. 2903.04(A), a first-degree felony. (Doc. No. 1). The indictment alleged that Kramer "did cause the death of [Matney] and such death was the proximate result of Robert R. Kramer committing or attempting to commit the felony offense of Trafficking in Heroin." (*Id.*). On July 21, 2014, Kramer entered a plea of not guilty to the count of the indictment. (July 21, 2014 Tr. at 2). (*See also* Doc. No. 7). The case proceeded to a jury trial on April 15, 16, and 17, 2015. (See Doc. No. 64). The jury found Kramer guilty of the count of the indictment. (*Trial Tr.*, Vol. III, at 383); (Doc. Nos. 59, 64). The trial court sentenced Kramer on June 9, 2015 and filed its judgment entry of sentence on June 12, 2015. (Doc. No. 66).

*State v. Kramer*, 2016-Ohio-2984, ¶ 2, 2016 WL 2853587, *1 (Ohio App. Ct. 3d Dist., May 16, 2016). Kramer was sentenced to nine years incarceration followed by five years post release control. (ECF No. 11-1, Ex. 4, PageID 179).

### B.  Direct Appeal

On June 18, 2015, Kramer filed a timely notice of appeal to the Third District Court of Appeals, Defiance County, Ohio. (ECF No. 11-1, Ex. 5, PageID 182). In his merit brief, Kramer raised the following three assignments of error:

1. The trial court erred and abused its discretion when it denied the Defendant's request to proceed pro se, a violation of his due process right to self- representation under the 6th and 14th amendments of the United States Constitution and Article I §10 of the Ohio Constitution.

2. The Defendant received ineffective assistance of counsel, a violation of his due process rights under the 6th and 14th amendments of the United States Constitution and Article §10 of the Ohio Constitution.

3.  The Defendant was found guilty by a jury against the manifest weight of evidence.

(ECF No. 11-1, Ex. 6, PageID 187). The state filed a brief in response. (ECF No. 11-1, Ex. 7, PageID 211). On May 16, 2016, the Third District Court of Appeals overruled Kramer's assignments of error and affirmed the judgment. (ECF No. 11-1, Ex. 8, PageID 260).

On June 24, 2016, Kramer, *pro se*, filed a timely notice of appeal with the Supreme Court of Ohio. (ECF No. 11-1, Ex. 9, PageID 303). In his memorandum in support of jurisdiction, Kramer asserted the following three propositions of law:

> **Proposition of Law One:** The trial court abused it's discretion when denying the defendant the right to self representation. [sic]

> **Proposition of Law Two:** Does a defense attorney's deficient cross examination of perjured testimony meet criteria for "Ineffective Assistance of Counsel?"

> **Proposition of Law Three:** The Defendant was convicted against the manifest weight of evidence.

(ECF No. 11-1, Ex. 10, PageID 305). In an entry filed October 26, 2016, the Ohio Supreme Court declined jurisdiction to hear the case. (ECF No. 11-1, Ex. 11, PageID 364). Kramer's conviction became final 90 days later, on January 24, 2017.

### C.  Ohio App. R. 26(B) Application to Reopen Appeal

On May 31, 2016, Kramer, *pro se*, filed an App. R. 26(B) application to reopen his appeal in the Third Appellate District asserting that his appellate counsel was ineffective for failing to raise the following issues in direct review:

1.  Prosecution violated the Appellant's right to Due Process under the Fifth and Fourteenth Amendments, U.S. Constitution, Section 16, Article I, § 10 Ohio Constitution, when perjured testimony was introduced at trial by prosecution witnesses. [sic]

2.  The prosecution violated the Appellant's right to Due Process under the Fifth and Fourteenth Amendments, U.S. Constitution; Section 16, Article 1, Ohio Constitution, by Suppressing Evidence.  [sic]

3.  The prosecution violated the Appellant's right to Due Process under the Fifth and Fourteenth Amendments, U.S. Constitution; Section 16, Article I,§ 10 Ohio Constitution, when severe Prosecutorial Misconduct occurs. [sic]

(ECF No. 11-1, Ex. 12, PageID 365). On June 2, 2016, Kramer, *pro se*, also filed an untimely App. R. 26(A) "motion for reconsideration for direct appeal."  (ECF No. 19-1).  In a judgment entry filed July 11, 2016, the Court denied Kramer's application for reopening direct appeal as meritless and denied his motion for reconsideration as untimely. (ECF No. 11-1, Ex. 14, PageID 411).

Kramer then filed a "motion for late filing for reconsideration" asserting that he had made an error in filing that resulted in the postal service returning his App. R. 26(A) motion for reconsideration of his appeal. (ECF No. 11-1, Ex. 15, PageID 413). In a judgment entry filed August 5, 2016, the Court denied Kramer's motion. (ECF No. 11-1, Ex. 16, PageID 415).

On August 17, 2016, Kramer, *pro se*, filed a notice of appeal with the Supreme Court of Ohio. (ECF No. 11-1, Ex. 17, PageID 417). In his memorandum in support of jurisdiction, Kramer asserted the following four propositions of law:

**Proposition of Law One:** The appellant received the ineffective assistance of counsel on appeal.

**Proposition of Law Two:** Appellant's right to Due Process under the Fifth and Fourteenth Amendments were violated, when perjured testimony was introduced at trial by prosecution witnesses, denying him a right to a fair trial.

**Proposition of Law Three:** Appellant's right to Due Process under the Fifth and Fourteenth Amendments, by Suppression of Evidence, by the prosecution denying him a fair trial.

4

>**Proposition of Law Four:** Appellant's right to Due Process under the Fifth and Fourteenth Amendments, U.S. Constitution; Section 16, Article I, § 10 Ohio Constitution, when Prosecutorial Misconduct occurs.

(ECF No. 11-1, Ex. 18, PageID 420). In an entry filed October 26, 2016, the Ohio Supreme Court declined jurisdiction to hear the case. (ECF No. 11-1, Ex. 19, PageID 439).

### D.  Delayed Post-Conviction Petition

Over four months later, on March 15, 2017, Kramer, *pro se*, filed a motion for leave to file a delayed petition for post-conviction relief claiming that his petition was tardy because he was denied access to discovery of materials designated "Counsel Only," and also because there was no journal entry noting when the trial transcripts had been filed. (ECF No. 11-1, Ex. 20, PageID 440). Respondent summarized the supporting facts of the claims Kramer raised in his post-conviction petition:

>**Claims 1-9:** Defendant was denied his, Sixth Amendment Right, under the U.S. Constitution; Section 10 Article 1 right, under the Ohio Constitution that guarantees not only his right to Counsel, but to the Affective [sic]Assistance of Counsel.
>
>Kramer claims that his counsel failed to produce phone records during trial that would have discredited the expert witness, counsel failed to address the state's expert witnesses, failed to address issues during cross examination which would have helped Kramer's case, failed to challenge Det. Campbell's testimony regarding lab reports for tests performed on the syringe, failed to challenge Det. Campbell's "perjured" testimony regarding the amount of heroin found at the crime scene, failed to produce Police Evidence Log Sheet and BCI reports to impeach Campbell, failed to produce evidence labeled "Counsel Only," failed to gather online information from Xbox Live and give it to Kramer, failed to file a motion to suppress incriminating recorded jailhouse conversations between Kramer and his friends, failed to challenge admittance of partial recorded conversations, failed to object to state's presentation of victim's mother, Pamela Addington, and failed to cross examine Addington, and failed to introduce evidence of Kramer's crime of marijuana possession.
>
>**Claim 10:** Appellant's right to Due Process under the Fifth and Fourteenth Amendments were violated, when perjured testimony was introduced at trial by prosecution witnesses, denying him the right to a fair trial.

Det. Scott Campbell gave perjured testimony pertaining to whether or not packaging for the transport of the narcotics sold to the victim was ever located at the scene.

**Claim 11:** Appellant's right to Due Process under the Fifth and Fourteenth Amendments were violated, when Prosecutorial Misconduct occurred with the willful Suppression of Evidence by the prosecution, when, Detective Scott Campbell, tampered with evidence making it unavailable for review by the defense.

Det. Scott Campbell gave perjured testimony pertaining to whether or not packaging for the transport of the narcotics sold to the victim was ever located at the scene. To not provide this packaging for the drugs for review to the defense and then lying about it even existing violated Appellant's right to Due Process.

(ECF No. 11 at 18 (citing ECF No. 11-1, Ex. 21, PageID 475-495)). The trial court denied

Kramer's motion for leave to file the delayed post-conviction on March 20, 2017.  (ECF No.

11-1, Ex. 22, PageID 536).

Kramer, *pro se*, filed a notice of appeal with the Third District Court of Appeals. (ECF

No. 11-1, Ex. 23, PageID 537). In his brief Kramer raised the following assignments of error:

1.   The trial court erred and abused it's discretion when it denied the appellant's pettitoin for post conviction relief [sic]

2.   The trial court erred and abused it's discretion when it denied appellant leave to file a delayed pettitoin for post conviction relief [sic]

(ECF No. 11-1, Ex. 24, PageID 541). The State filed a brief in response. (ECF No. 11-1, Ex. 25,

PageID 583). On September 14, 2017, the appellate court held that, since Kramer's post-

conviction petition was untimely filed, the trial court lacked jurisdiction to consider it.

Therefore, the trial court did not err by denying his motion for leave to file a delayed petition

for post-conviction relief. (ECF No. 11-1, Ex. 26, PageID 614). The appellate court noted that

the docket reflected that the trial transcripts were filed on October 23, 2015. (ECF No. 11-1, Ex.

26, PageID 643).

On October 2, 2017, Kramer, *pro se*, filed a motion for reconsideration pursuant to App. R. 26(A). (ECF No. 11-1, Ex. 27, PageID 616). On November 9, 2017, the appellate court denied the motion as meritless. (ECF No. 11-1, Ex. 28, PageID 650).

On October 30, 2017, Kramer, *pro se*, filed a notice of appeal with the Ohio Supreme Court from the appellate court's September 14, 2017, decision (ECF No. 11-1, Ex. 26, PageID 643) denying Kramer leave to file his untimely post-conviction petition. (ECF No. 11-1, Ex. 29, PageID 651). In his memorandum in support of jurisdiction, Kramer set forth the following propositions of law:

1. The trial Court Abused it's Discretion when it denied Appellant's Petition for Post-Conviction Relief. [sic]

2. The Trial Court Erred and Abused it's Discretion when it Denied the Appellant Leave to File a Delayed Petition for Post Conviction Relief. [sic]

(ECF No. 11-1, Ex. 30, PageID 654). On January 31, 2018, the Ohio Supreme Court declined to accept jurisdiction to hear the case. (ECF No. 11-1, Ex. 31, PageID 678).

**E.  Federal Habeas Corpus Petition**

On October 16, 2017, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 alleging twenty-four grounds for relief. (ECF No. 1). The matter was dismissed without prejudice on October 23, 2017 pending exhaustion of Petitioner's state court remedies. (ECF No. 4). Petitioner moved to reopen the petition on February 27, 2018 (ECF No. 6), which the Court granted on March 5, 2018 (ECF No. 7). Petitioner asserts the following grounds for relief:

> **GROUND ONE:** Petitioner was denied the 6th Amendment Right to, self representation [sic], which violated his 14th Amendment Right to Due Process, due to an abuse of discretion, by the Court.

> **GROUND TWO:** Petitioner was denied the 6th Amendment right to, not only counsel, but to the effective Assistance of Counsel, when the trial attorney John Thebes failed to investigate into key

7

evidence in the case and how it pertained to the victims [sic] cause of death and the state's case in chief.

**GROUND THREE:** Petitioner was denied the 6th Amendment right not only to Counsel, but the effective assistance of counsel, when the defense attorney, [John Thebes] refused to cross examine Pamela Addington [and Detective Scott Campbell pertaining to the perjured testimony they both gave at trial.] [See ECF Nos. 9-1 and 14].

**GROUND FOUR:** This Petitioner's 6th Amendment Right, to not only counsel, but to the effective assistance of counsel, were violated when he received the Ineffective Assistance of Counsel on Appeal, which denied proper appellate review, denying his 5th and 14th Amendment right to Due Process.

**GROUND FIVE:** Petitioner's 5th and 14th Amendment Rights to Due Process were violated when perjured testimony was knowingly introduced at trial by state witness, Detective Scott Campbell, denying Petitioner's right to a fair trial.

**GROUND SIX:** Petitioner's 5th and 14th Amendment Rights to Due Process were violated when perjured testimony was knowingly introduced at trial by state's expert witness, FBI Special Agent Kevin Horan, denying Petitioner's rights to a fair trial.

**GROUND SEVEN:** Petitioner's Rights to Due Process under the 5th and 14th Amendment's [sic] was denied when perjured testimony was knowingly introduced at trial by the Prosecution's expert witness, Kevin Horan.

**GROUND EIGHT:** The Prosecution violated Petitioner's Rights to Due Process under the 5th and 14th Amendment with the Suppression of Evidence.

**GROUND NINE:** The conviction in this case, was against the Manifest Weight of the Evidence, and violated Petitioner's 5th and 14th Amendment Rights to Due Process. [Petitioner waives argument on this ground. (*See* ECF No. 34 at 30).]

**GROUND TEN:** The Petitioner's 5th and 14th Amendment Rights to Due Process were violated when Prosecutorial Misconduct occurs by the Prosecutor knowingly introducing perjured testimony given by lead Detective, Scott Campbell.

**GROUND ELEVEN:** This Petitioner's 5th and 14th Amendment Rights to Due Process were violated when Prosecutorial Misconduct occurred during closing argument when the Prosecutor vouched for his expert witness's perjured testimony to be true, saying it couldn't happen any other way. The Prosecutor then furthered the misconduct by telling the jury that both the defendant and his alibi witness were lying. [Petitioner stipulates that Ground Eleven is procedurally defaulted. (*See* ECF No. 34 at 30).]

**GROUND TWELVE:** The Petitioner was denied his 5th and 14th Amendment Rights to Due Process and Equal Protection under the law when the trial court committed "Plain Error" by overruling and denying a motion for Rule 29 acquittal. [This ground was previously dismissed. (*See* ECF No. 14).]

**GROUND THIRTEEN:** The prosecution violated the petitioner's 5th and 14th Amendment Rights to Due Process and Equal Protection under the law by introducing Other Acts Evidence outside of what Rule 404(b) of the Rules of Evidence allow.

**GROUND FOURTEEN:** The Petitioner's 5th and 14th Amendment Right's [sic] to Due Process were violated when a Defective Indictment was brought forth against him allowing the state to find him guilty of a crime without first finding him guilty of every element of that crime, beyond a reasonable doubt.

**GROUND FIFTEEN:** Petitioner was denied the 6th Amendment right to, not only counsel, but to the effective Assistance of Counsel, when Counsel failed to file a motion to dismiss on the grounds of a Defective Indictment.

**GROUND SIXTEEN**: This Petitioner was denied the 6th Amendment Right under the U.S. Constitution that guarantees, not only counsel, but the right to the effective assistance of counsel, when trial counsel failed to produce Verizon GPS records provided to him in discovery, that would have impeached perjured testimony by the state's expert witness, show the alibi defense he put forth was rock solid and ensure his clients [sic] right to a fair trial and Due Process.

**GROUND SEVENTEEN**: This Petitioner was denied the 6th Amendment Right under the U.S. Constitution that guarantees, not only Counsel, but the right to the effective assistance of counsel, when the trial attorney pulled evidence from the list of defense exhibits from the trial record after the prosecution's expert witness gave perjured testimony when he was confronted with that specific

evidentiary document. By pulling the document pertaining to the 911 call records, it left it unavailable for the review in direct appeal hindering the Due Process of this Petitioner during proper appellate review and denying him a fair trial. [Petitioner waives argument on Ground Seventeen. *See* ECF No. 34 at 31).]

**GROUND EIGHTEEN**: This Petitioner was denied the 6th Amendment Right under the U.S. Constitution that guarantees, not only Counsel, but the right to effective assistance of counsel, when trial counsel failed to investigate the state's main case in point that the victim used the single syringe found at the scene to inject heroin and then died.

**GROUND NINETEEN**: This Petitioner was denied the 6th Amendment Right under the U.S. Constitution that guarantees, not only Counsel, but the right to effective assistance of counsel, when trial counsel failed to produce the police inventory log sheets provided to him in discovery and use the records to impeach the perjured testimony, pertaining to the false amounts of heroin that were allegedly collected at the scene by the lead detective, Scott Campbell.

**GROUND TWENTY**: This Petitioner was denied the 6th Amendment Right under the U.S. Constitution that guarantees, not only Counsel, but the right to effective assistance of counsel, by trial counsel failing to produce a picture of the package used to transport heroin to the victim that was marked under the special designation "Counsel Only" that multiple witnesses for the prosecution said was not recovered from the scene.

**GROUND TWENTY-ONE**: This Petitioner was denied the 6th Amendment Right under the U.S. Constitution that guarantees, not only Counsel, but the right to effective assistance of counsel, when trial counsel failed to utilize key evidence from the online gaming service of Microsoft/Xbox that was already gathered under subpoena to solidify the alibi defense put forth by the attorney himself.

**GROUND TWENTY-TWO**: This Petitioner was denied the 6th Amendment Right under the U.S. Constitution that guarantees, not only Counsel, but the right to effective assistance of counsel, when trial counsel failed to file a motion to suppress challenging admittance of recorded conversations submitted only in part and into evidence outside of what time frame allows per the rules of evidence. [Petitioner waives argument on Ground Twenty-Two. (*See* ECF No. 34 at 31).]

> **GROUND TWENTY-THREE**: This Petitioner was denied the 6th Amendment Right under the U.S. Constitution that guarantees, not only Counsel, but the right to effective assistance of counsel, when counsel failed to object to Pamela Addington testifying when she was not on any witness list and then allowed her to give perjured testimony without producing evidence gathered under subpoena by the defense to impeach that perjured testimony.

> **GROUND TWENTY-FOUR**: This Petitioner was denied the 6th Amendment Right under the U.S. Constitution that guarantees, not only Counsel, but the right to effective assistance of counsel, when trial counsel failed to present evidence in his possession that backed up trial testimony given by this Petitioner saying that the text messages between the petitioner and the victim were about a small amount of marijuana, not heroin. [Not argued in Traverse.]

(ECF No. 6-1 at 5-39). The Return of Writ was filed on June 4, 2018 (ECF No. 11), followed by Petitioner's Traverse on July 9, 2019 (ECF No. 34).

Kramer originally asserted 24 grounds for relief. The Court previously dismissed Ground 12 upon Petitioner's motion. (ECF No. 14). The Commissioner argues that Grounds 2, 5-8, 10-18, and 21-24 are procedurally defaulted. In his Traverse, Petitioner waives argument on Grounds 9, 17, and 22.[2] Kramer further stipulates that Grounds 11 and 13 are procedurally defaulted. As explained below, this Court agrees that Grounds 2, 5-8, 10-16, 18, 21, 23, and 24 are procedurally defaulted and will address the merits of Grounds 1, 3, 4, 9, 19, 20.

## III.    Law and Analysis

## A.  Standard of Review

The Sixth Circuit recently discussed the appropriate standard of review for habeas claims brought by state prisoners in *Stermer v. Warren,* 959 F.3d 704, 720-722 (6th Cir. 2020). "Petitions

---

[2] Although Petitioner waives argument on Grounds 9, 17, and 22, this Court has addressed these grounds as Petitioner is not required to give any additional argument and did not specifically stipulate to the dismissal of these grounds.

for habeas corpus brought by state prisoners are subject to 28 U.S.C. § 2254, the modern version of which comes from the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")." *Id*. at 720 (citing *Northrop v. Trippett*, 265 F.3d 372, 376 (6th Cir. 2001); *Barker v. Yukins*, 199 F.3d 867, 871 (6th Cir. 1999)). "AEDPA requires habeas petitioners to exhaust their claims in state court before turning to a federal court for relief." *Id*. (citing 28 U.S.C. § 2254(b)(1)). "And if a state court decides a claim on the merits, that decision is subject to significant deference." *Id*. (citations omitted).

"For a federal court to grant relief in such a case, the state court's decision must have been '(1) ... contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) ... based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Id*. at 720-721 (quoting 28 U.S.C. § 2254(d)). "Under these rules, a state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id*. at 721 (citations and internal quotation marks omitted). "This deference applies even when the state court fails to explain its reasoning, in which case 'the federal court 'must determine what arguments or theories ... could have supported the state court's decision' " and afford those theories AEDPA deference." *Id* (quoting *Sexton v. Beaudreaux*, ––– U.S. ––––, 138 S. Ct. 2555 (2018) (per curiam) (alteration in original) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)). "Furthermore, 'evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" *Id*. (quoting *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)).

"Section 2254(d) also determines which facts a federal court can consider. When assessing whether the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law,' 28 U.S.C. § 2254(d)(1), the reviewing court 'is limited to the record that was before the state court that adjudicated the claim on the merits[.]'" *Id.* (quoting *Cullen v. Pinholster,* 563 U.S. 170, 181 (2011)). "Because of this, a district court cannot use a federal evidentiary hearing to supplement the record when assessing a claim under § 2254(d)." *Id.* (citing *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 465 (6th Cir. 2012)). "That said, if a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits." *Id.* (citations omitted).

"If a habeas petitioner satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d), AEDPA deference no longer applies." *Id.* "Instead, the petitioner's claim is reviewed de novo as it would be on direct appeal." *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)). "The district court would also be free to expand the record, provided that the petitioner diligently attempted to present those facts in state court (or alternatively if [he] meets AEDPA's narrow exception for evidence of actual innocence)." *Id.* at 721-722 (citations omitted).

## B. Procedural Default

The Commissioner argues that Grounds 2, 5-8, 10-18, and 21-24 are procedurally defaulted. Petitioner waives argument on Grounds 17 and 22 and stipulates that Grounds 11 and 13 are procedurally defaulted. (*See* ECF No. 34 at 30-31). Ground 12 was previously dismissed

upon Kramer's motion. (*See* ECF Nos. 9 and 14). As explained below, this Court finds that Grounds 2, 5-8, 10-18, and 21-24 are procedurally defaulted

Procedural default occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982); *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006). In determining whether there has been a procedural default, the federal court looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). When a state court declines to address a prisoner's federal claims because the prisoner failed to meet a state procedural requirement, federal habeas review is barred as long as the state judgment rested on "independent and adequate" state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). To be independent, a state procedural rule and the state courts' application of it must not rely in any part on federal law. *Id*. at 732-33. To be adequate, a state procedural rule must be "'firmly established' and 'regularly followed'" by the state courts at the time it was applied. *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009).

A petitioner procedurally defaults a claim by failing to "fairly present" the claim in state court when he does not pursue that claim through the state's "'ordinary appellate review procedures,'" and, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim. *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas

14

corpus petition."). Under these circumstances, while the exhaustion requirement is technically satisfied because there are no longer any state-court remedies available to the petitioner, the petitioner's failure to have the federal claims fully considered in the state courts constitutes a procedural default of those claims, barring federal habeas review. *Williams*, 460 F.3d at 806 ("Where state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review."); *see also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . ., it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . ." (internal citations omitted)).

Furthermore, to "fairly present" a claim to a state court, a petitioner must assert both its legal and factual basis. *Williams*, 460 F.3d at 806 (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Most importantly, a "'petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law.'" *Id.* (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)). A petitioner can overcome a procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a "fundamental miscarriage of justice" if the claim is not considered. *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Id.* "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th

15

Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)); *Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004) ("The 'fundamental miscarriage of justice' gateway is open to a petitioner who submits new evidence showing that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.' " (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995))).

### 1. Ground 2 – Ineffective Assistance of Trial Counsel Not Raised in State Court

In Ground 2, Kramer alleges that his trial counsel was ineffective for failing to investigate and argue the victim's cause of death, including his medical records, his potential heart condition, and the syringe used to inject the heroin. Specifically, Kramer argues that there was a sole syringe found at the scene that was allegedly used to inject the lethal dose of heroin, but that the syringe was never tested to determine whether it was used by the victim. Kramer argues that had the syringe been tested, it would have shown that the victim had not used the syringe. He argues that this fact would have caused reasonable doubt in the jurors' minds as to the cause of death. (ECF No. 34 at 33). Kramer argues that if the test results had shown that the victim had not used the syringe, that the jury would have had a difficult time determining whether the victim died from the heroin overdose or a potential heart condition given that the autopsy revealed that his left ventricle artery was 80% blocked. (ECF No. 34 at 33). Kramer believes that had the jury learned the "truth" about the syringe – that it was never used by the victim – that it would have acquitted him. (ECF No. 34 at 34).

The Warden argues that this ground is procedurally defaulted. (ECF No. 11 at 26). Kramer concedes that he failed to raise this issue to the Ohio Supreme Court "in an oversight". (ECF No. 34 at 32). Accordingly, there is no dispute that Ground 2 is procedurally defaulted.

Kramer seeks to excuse his default on Ground 2 by arguing that a fundamental miscarriage of justice would occur if he is not granted a merits review. A fundamental miscarriage of justice

is the conviction of one who is "actually innocent." *See Coleman*, 501 U.S. at 750; *Murray,* 477 U.S. at 496. Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324.

To be successful, Kramer must show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in the light of the new evidence. *Id.* Kramer fails to provide any "new" reliable evidence that would demonstrate that no reasonable juror would have found him guilty had said "new" evidence been considered at trial. Although his counsel chose not to introduce certain evidence at trial (*see below* Grounds 16, 17, 18, 21, 22, 23, and 24), the evidence is not "new" because it would have been available to him at trial. *See Burks v. Warden, Belmont Corr. Inst.,* No. 18-3735, 2018 WL 7203231, at *2 (6th Cir. Nov. 14, 2018); *Connolly v. Howes*, 304 F. App'x 412, 418 (6th Cir. 2008).  Kramer has failed to produce any "new" reliable evidence that would demonstrate that no reasonable juror would have found him guilty.

Accordingly, Kramer's procedural default of Ground 2 should not be excused.

### 2.  Grounds 5, 6, 7, 8, and 10 – Due Process Errors Not Asserted on Direct Appeal

Grounds 5-8 and 10 assert errors that allegedly occurred during Kramer's trial: Ground 5 alleges a due process violation when the State introduced "perjured" testimony of Detective Campbell regarding the amount of heroin found at crimes scene; Grounds 6 and 7 allege due process violations when the State supported "perjured" testimony of FBI Agent Horan regarding cell phone towers and cell phone records; Ground 8 alleges prosecutorial misconduct for

17

"suppressing" lab reports from syringe; and Ground 10 alleges a due process violation when the State supported "perjured" testimony of Detective Campbell regarding the amount of heroin found at the crime scene. The Warden argues that each of these grounds is procedurally defaulted since none of them were presented in Kramer's direct appeal. Kramer does not dispute that the failed to raise these grounds on direct appeal. Accordingly, these claims are procedurally defaulted.

Kramer asks this Court to excuse the procedural default by finding that it was caused by ineffective assistance of appellate counsel who failed to preserve the issues on direct appeal (which is the basis of Ground 4). (ECF No. 34 at 36); *see Edwards v.  Carpenter*, 529 U.S. 446, 451 (2000) (ineffective assistance of counsel may be cause to excuse the procedural default). The Warden argues that Kramer's "counsel satisfied *Strickland*'s deferential standard" such that "Kramer may not successfully employ his non-defaulted-but-meritless ineffective appellate counsel Ground 4 to excuse the procedural default of his instant Grounds 5-8 and 10." (ECF No. 11 at 32).

"Attorney error does not constitute 'cause' unless it rises to the level of a constitutional violation of the right to counsel under *Strickland*." *Monzo v. Edwards,* 281 F.3d 568,577 (6th Cir. 2002) (citing *Murray*, 477 U.S. at 488).  The Supreme Court articulated the two-part test for determining whether counsel is ineffective in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner seeking to establish that his counsel's assistance was ineffective must show 1) that his counsel's performance was deficient because it fell below an objective standard of reasonableness and 2) that counsel's deficient performance prejudiced petitioner. *Strickland*, 466 U.S. at 687-88. In establishing prejudice, a petitioner "need not show that counsel's deficient conduct more likely than not altered the outcome of the case," but only, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*.

18

The failure to raise an issue on appeal constitutes ineffective assistance of appellate counsel "[g]enerally only when ignored issues are clearly stronger than those presented…" *Smith v. Robbins*, 528 U.S. 259, 288 (2000). "Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins,* 356 F.3d 688, 699 (6th Cir. 2004), citing *Greer v. Mitchell,* 264 F.3d 663, 676 (6th Cir. 2001); *see also McMeans*, 228 F.3d at 682. As the court in *McFarland* explained, "[i]f there is a reasonable probability that [the defendant] would have prevailed on appeal had the claim been raised, we can then consider whether the claim's merit was so compelling that appellate counsel's failure to raise it amounted to ineffective assistance of appellate counsel." *McFarland,* 356 F.3d at 700. Accordingly, a claim that appellate counsel could have, but did not, raise would demonstrate prejudice only if at the time it could have been raised the claim had a reasonable probability of success to have changed the result of the appeal. *Id.* at 699-700.

Kramer cannot demonstrate that he was prejudiced by his appellate attorney's decision not to raise these issues on appeal because he cannot demonstrate a reasonable probability of prevailing on Grounds 5-8 and 10.

Grounds 5 and 8 assert that Detective Campbell falsely testified at trial. Ground 5 challenges the testimony of Detective Campbell regarding the amount of heroin found at the scene. Kramer alleges that the "actual" amount of 0.4 grams was never presented at trial and since he was only accused of selling the decedent 0.2 grams, that he could not have been the one to provide the lethal heroin. (ECF No. 34 at 40, PageID 1472). Specifically, Kramer asserts: "The Police inventory log sheets show Campbell actually logged in, 0.3 grams of heroin at the police station and sent another amount close to 0.1 grams to BCI. (Doc.#11-1, Exh.12, Pg. 396-398) This totals

0.4 grams. This is four times the amount of 'less than 0.1 grams' Campbell, testified to finding at the scene. This does not include the unknown amount of heroin that victim allegedly used to overdose with." (ECF No. 34 at 117, PageID 1549). In Ground 8, Kramer alleges that Detective Campbell perjured himself when he stated that the syringe found at the scene was sent to BCI for testing. As evidence of this alleged perjury, Kramer asserts that no BCI lab report was presented at trial that included results of the syringe and, thus, Detective Campbell either lied or suppressed the lab results. (ECF No. 34 at 40, PageID 1472).

The standard for a false testimony claim is as follows:

> The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. In order to establish prosecutorial misconduct or denial of due process, the defendants must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false. The burden is on the defendants to show that the testimony was actually perjured, and mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony.

*Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998) (quoting *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989) (citations omitted)). Kramer's arguments would have been meritless on appeal as there is no evidence that the witnesses gave false testimony nor that the statements were material.

There is no indication that Detective Campbell committed perjury when testifying about the amount of heroin at the scene or his understanding that the syringe had been sent to BCI for testing. Upon cross examination, Detective Campbell was asked to estimate the amounts of heroin at the scene; he stated: "Residually at  the scene it was, uh, the, um, the rock found on the phone was less than a tenth of a gram, and there was residual found on the - -  residual on the spoon.  Um, it wasn't a weight given to it. Generally, more likely, you're not going to get a weight

because that's probably going to be if it originally was sold, it would  probably be close to a tenth, would be a normal use for heroin to be injected." (ECF No. 12-1, PageID 848).  Even if a report indicates 0.4 grams of heroin were recovered, that does not establish that Detective Campbell provided false testimony, much less that the prosecutor was aware of any alleged falsity. Detective Campbell merely responded to counsel's request that he estimate the amount of heroin found at the scene based on his observations. Accordingly, Kramer has not demonstrated that Detective Campbell's statement was "actually false." Moreover, this statement was immaterial in that the amount of heroin – whether .2 or .4 grams – would not have affected the jurors finding that Kramer caused the death of another and that the death was the proximate result of Kramer committing or attempting to commit the felony offense of trafficking in heroin. *See* Ohio Rev. Code Ann. § 2925.03(A) and (C)(6)(a) (eff Sep. 29, 2013 – Sep. 28, 2018) ("Except as otherwise provided [ ], trafficking in heroin is a felony of the fifth degree."). The indictment did not specify the amount of heroin Kramer was charged with selling, nor does § 2925.03 specify a minimum amount of heroin required to classify as a felony of the fifth degree.[3] Accordingly, Kramer has not demonstrated that Detective Campbell's statement was "actually false", nor that the statement was material.

With respect to Kramer's assertion that Detective Campbell gave false testimony about sending the syringe to BCI for testing, he has failed to demonstrate anything approaching perjury. The absence of such a report from the record does not serve as evidence of perjury and Kramer has not provided any evidence that the syringe was not sent for testing nor that his counsel did not receive the results. Moreover, this statement is immaterial. The State established cause of death

---

[3] In fact, any amount of heroin up to one gram is classified as a fifth-degree felony. Thereafter, the degree of felony increases as the weight increases. *See* Ohio Rev. Code §2925.03.

through the coroner. The fact that a BCI report was not introduced at trial is unsurprising given that the sole issue contested was whether Kramer sold decedent the heroin. Accordingly, Kramer has not demonstrated that Detective Campbell's statement was "actually false", nor that it was material.

Because these claims would have had no merit on appeal, Kramer has failed to demonstrate prejudice from his appellate attorney's decision not to raise them. Thus, Kramer has not established cause for procedurally defaulting on Grounds 5 and 8.

The basis of Grounds 6 and 7 is that FBI Agent Horan gave false testimony when testifying about the cell phone towers when he testified that Kramer's cell records indicate he was in the area of decedent's home the night of his overdose. The State called Agent Horan as an expert witness in "the forensics analysis of cell phones, the historical records analysis of cell phones" that "show[s] the approximate location of where a phone is at a certain time when a call is made." (ECF No. 12-2, PageID 925). The appellate court summarized Agent Horan's testimony as follows:

> {¶ 32} Horan, an FBI special agent, was the State's final witness. ([Trial Tr., Vol. II] at 228). Using records from Verizon concerning Kramer's cell phone, Horan testified to the location of Kramer's cell phone on December 26, 2013 into the midnight hour of December 27, 2013. (*Id*. at 244–259). According to Horan, there are three Verizon cell-phone towers in Defiance, Ohio—one downtown, one south, and one north. (*Id*. at 247–248, Ex. 79).

> {¶ 33} Horan testified that between 7:01 and 7:22 PM, Kramer's cell phone was communicating with a sector2 of the downtown tower and a sector of the south tower in Defiance. (*Id*. at 248–250). Portions of the coverage areas of these two sectors overlap, and they include the area around an address provided to Horan during the investigation—1221 Ayersville Avenue in Defiance.3 (*Id*. at 251–253, State's Ex. 79). According to Horan, between 8:23 and 9:25 PM, Kramer's cell phone left Defiance and was in Toledo, Ohio and communicating with cell-phone towers there. (*Id*. at 250–251). Horan testified that between 10:26 and 11:56 PM, Kramer's cell phone was back in Defiance, communicating with the same two cell-phone-tower sectors in Defiance as it was between 7:01 and 7:22

22

PM. (*Id*. at 251–252). Specifically, at 11:55 PM, Kramer's cell phone was within the sector covering the 1221 Ayersville Avenue address. (*Id*. at 252).

{¶ 34} Kramer's cell phone then moved again, Horan testified. (*Id*.). Specifically, according to Horan, at 12:06 AM, Kramer's cell phone communicated with the sector of the north tower in Defiance that faces Matney's residence on Baltimore Road. (*Id*. at 252–254). According to Horan, at 12:06 AM on December 27, 2013, Kramer's cell phone could not have been at 1221 Ayersville Avenue. (*Id*. at 253–254, 258). Horan testified that by 12:23 AM, Kramer's cell phone was communicating with a sector of a tower located in Paulding, Ohio, southwest of Defiance. (*Id*. at 253–256, State's Ex. 79). According to Horan, between 1:37 and 10:31 AM on December 27, 2013, Kramer's cell phone had returned to Defiance and was "exclusively within the footprint of" the south tower in Defiance. (Id. at 255–256, State's Ex. 79).

{¶ 35} On cross-examination, Horan admitted that he cannot say conclusively that Kramer's cell phone was at the address of Matney's residence at 12:06 AM on December 27, 2013. (*Id*. at 263). Rather, "[i]t could have been anywhere within the footprint." (*Id*.). Horan testified that, had the north tower in Defiance been malfunctioning, it would not have shown up in Kramer's cell-phone records. (*Id*. at 263–264). Horan was presented with the document recording the 9–1–1 cell-phone call made by Matney's neighbor when Matney was found deceased in his residence. (*Id*. at 268–269, Defendant's Ex. B). Horan admitted that the cell-phone-tower information in the document indicates that the cell-phone tower for the 9–1–1 call was a sector of the south Verizon tower in Defiance. (*Id*. at 269, 272).

{¶ 36} On re-direct examination, Horan confirmed that at 12:06 AM on December 27, 2013—the time of a text message sent from and a phone call to Kramer's cell phone—Kramer's cell phone could not "possibly have been hitting on the tower that covers 1221 Ayersville Avenue." (*Id*. at 271). Horan also testified that the sector of the south tower identified in the 9–1–1 record faces southwest—away from 1221 Ayersville Avenue. (*Id*. at 274).

*State v. Kramer*, 2016-Ohio-2984, ¶ 32-36.

Contrary to Kramer's interpretation, the record does not reveal that Agent Horan was lying.

Agent Horan opined that at 12:06 a.m., the last time Kramer communicated with the decedent,

Kramer could not have been at his supposed alibi address at 1221 Ayersville, because that address is not within the footprint of tower 484, which is the tower from which Kramer's phone pinged. (ECF No. 12-2, PageID 954). Kramer's trial counsel then cross-examined Agent Horan about his forensic interpretation of Kramer's phone records, including the possibility for "overlapping" of footprints for various cell towers, overloaded networks, and tower malfunctions. Trial counsel also questioned Kramer regarding the 9-1-1 call placed from the decedent's residence that pinged off tower 492. Horan testified that it was possible. Horan did not testify, however, that Kramer's phone was at 2290 Baltimore Road. Instead, he testified that the phone could have been anywhere within the footprint of tower 484. (ECF No. 12-2, PageID 959). Horan testified that the alibi address of 1221 Ayersville was not within the footprint of either 492 or 484. (ECF No. 12-2, PageID 967). Accordingly, the evidence demonstrated that there was no way that Kramer was at the 1221 Ayersville address during the call at 12:06 a.m. (ECF No. 12-2, PageID 959-970).

In that there is no evidence that Agent Horan gave a false statement, Kramer's appellate attorney could not have been ineffective for failing to raise a meritless issue in direct review. *Greer*, 264 F.3d at 676. Thus, Kramer fails to establish cause for procedurally defaulting on Grounds 6 and 7.

Ground 10 alleges that the prosecutor committed misconducted by knowingly introducing "perjured" testimony from Agent Horan and Detective Campbell. As discussed above, there is no evidence that Agent Horan or Detective Campbell committed perjury. Accordingly, there can be no prosecutorial misconduct here.

Any claim for prosecutorial misconduct on the basis of Agent Horan's or Detective Campbell's testimony would have been meritless and appellate counsel was not ineffective for

failing to raise such a claim. *Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013). Thus, Kramer fails to establish cause for procedurally defaulting on Ground 10.

### 3. Grounds 11 and 13 – Prosecutorial Misconduct for Vouching; Introduction of Other Acts Evidence

The Commissioner argues that Grounds 11 and 13 are procedurally defaulted as Kramer failed to raise them with the state court. Kramer concedes that Grounds 11 and 13 are procedurally defaulted and does not argue that the default should be excused. (ECF No. 34 at 30). Accordingly, this Court finds Grounds 11 and 13 are procedurally defaulted and recommends that Grounds 11 and 13 be dismissed.

### 4. Grounds 14 and 15 – Defective Indictment and Ineffective Assistance of Counsel Brought for the First Time in the Petition for Habeas Relief

Ground 14 alleges that the indictment was defective by failing to charge Kramer with the predicate felony of trafficking in heroin, and Ground 15 asserts that trial counsel was ineffective for failing to challenge the validity of the indictment.

Kramer does not dispute that he failed to bring these claims in the state court (ECF No. 34 at 46); he argues, however, that such a challenge can be brought at any time and cannot be procedurally defaulted. (ECF No. 34 at 43-44). This argument has no merit as arguments related to validity of the indictment can be procedurally defaulted. *See Hazel v. Warden*, *Chillicothe Corr. Inst.*, No. 3:13-CV-332, 2014 WL 4076152, at *25 (S.D. Ohio Aug. 15, 2014) (finding petitioner had procedurally defaulted on his challenge to the validity of the indictment), supplemented, No. 3:13-CV-332, 2014 WL 4417771 (S.D. Ohio Sept. 8, 2014); *Schwarzman v. Miller*, No. 1:15 CV 885, 2016 WL 11259030, at *9 (N.D. Ohio Sept. 13, 2016) (finding petitioner had procedurally defaulted on his challenge to the sufficiency of the indictment), report and recommendation

adopted, No. 1:15-CV-885, 2017 WL 3187148 (N.D. Ohio July 27, 2017). Thus, Grounds 14 and 15 are procedurally defaulted. *Williams*, 460 F.3d at 806 (citation omitted).

Kramer argues that his procedural default should be excused because his failure to raise the issues in the state court was due to his appellate counsel's "erroneous advice" that raising the issue was meritless. (ECF No. 34 at 46). Kramer's procedural default cannot be excused on the basis of ineffective assistance of appellate counsel because Kramer also failed to present this ground for relief in the state court. *Edwards*, 529 U.S. at 453 ("an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted"). Kramer fails to provide any argument for why he failed to timely assert ineffective assistance of appellate counsel for failing to raise this issue. (ECF No. 34 at 45-48).

Accordingly, Kramer has failed to demonstrate cause to excuse his procedural default on Grounds 14 and 15.

### 5. Grounds 16, 17, 18, 21, 22, 23, and 24[4] – Ineffective Assistance of Trial Counsel Grounds Raised in Petitioner's Delayed Petition for Post-Conviction Relief

Despite Kramer's attempt to assert Grounds 16-18 and 21-24 in his delayed petition for post-conviction relief, these grounds are procedurally defaulted. Grounds 16-18 and 21-24 allege claims of ineffective assistance of trial counsel for failure to perform various actions: Ground 16 alleges that trial counsel failed to introduce Verizon phone records; Ground 18 alleges trial counsel failed to question Detective Campbell on lab results of syringe; Ground 21 alleges that trial counsel failed to use records from X-Box for alibi defense; Ground 22 alleges that trial counsel failed to file motion to suppress incriminating recorded jail-house phone conversations between Kramer and his friends; Ground 23 alleges that trial counsel failed to object to Pamela Addington's

---

[4] Kramer waives argument on Grounds 17 and 22. (ECF No. 34 at 31).

testimony; and Ground 24 argues that trial counsel failed to present a police report detailing Kramer's prior possession of marijuana. The Warden argues that each of these grounds is procedurally defaulted since Kramer failed to bring them on direct appeal.

The Court agrees with the Warden. Procedural default occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally, Wainwright*, 433 U.S. at 80, 84-87; *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. Here, Kramer failed to properly raise these claims in his direct appeal.

"Under the doctrine of *res judicata*, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment." *State v. Szefcyk* (1996), 1996-Ohio-337, 77 Ohio St.3d 93, paragraph one of the syllabus (citing *State v. Perry* (1967), 10 Ohio St.2d 175, paragraph nine of the syllabus). An exception to the procedural bar of *res judicata* exists if the defendant can put forward material evidence outside the record in a post-conviction petition under Ohio Rev. Code § 2953.21. *State v. Cowan,* 2002-Ohio-7271, ¶ 15, 151 Ohio App. 3d 228, 233, 783 N.E.2d 955, 958, aff'd, 2004-Ohio-1583, ¶ 15, 101 Ohio St. 3d 372, 805 N.E.2d 1085 ("An [ ] exception to *res judicata* exists when a defendant presents 'new, competent, relevant and material evidence *dehors* the record.'") (additional citations omitted). "[T]he evidence *dehors* the record must not be evidence which was in existence and available for use at the time of trial and which could and

should have been submitted at trial if the defendant wished to use it." *Id.* (citing *State v. Slagle* (Aug. 10, 2000), 8th Dist. No. 76834, 2000 WL 1144947, at * 3).

Grounds 16-18 and 21-24 each address trial counsel's errors in handling evidence at the pre-trial/trial level: failure to introduce Verizon phone records; not admitting a phone document pertaining to 9-1-1 call; failure to question Detective Campbell on lab results of syringe; failure to use records from X-Box for alibi defense; failure to file a motion to suppress incriminating recorded jail-house phone conversations between Kramer and his friends; failure to object to Pamela Addington's testimony; and failure to produce a police record of Kramer's marijuana conviction. Kramer improperly attempted to bring these claims in a post-conviction petition. Because the facts necessary to develop these claims were available at the time of trial, each of Kramer's grounds could have – and should have – been brought on direct appeal, and the Ohio doctrine of *res judicata* prohibits Kramer from bringing these claims in a petition for post-conviction relief. As such, Kramer failed to raise his claims before the state court while state remedies were still available. Thus, Kramer's claims are procedurally defaulted.

Furthermore, even assuming these claims would have been proper in a post-conviction petition—which they were not—the state court found that Kramer's post-conviction petition was untimely and therefore his claims would still be procedurally defaulted. On March 7, 2017, Kramer moved for leave to file a delayed petition for post-conviction relief. (ECF No. 11-1, Ex. 26, PageID 611). Kramer attempted to present Grounds 16, 17, 18, 21, 23, and 24 in his petition. (*See* ECF No. 11-1, Ex. 21). The trial court denied his motion to file a delayed petition on March 20, 2017. Kramer appealed. (ECF No. 11-1, Ex. 23, PageID 370). On appeal, the court found that Kramer had filed his petition untimely and that he had failed to establish that he met an exception specified in Ohio Rev. Code § 2953.21(A) to allow for a longer period. (ECF No. 11-1, Ex. 26, PageID 447).

The Ohio Supreme Court declined jurisdiction on January 31, 2018. (ECF No. 11-1, Ex. 31, PageID 678).

"If a state has a procedural rule that prevented the state courts from hearing the merits of a habeas petitioner's claim, that claim is procedurally defaulted when: (1) the petitioner failed to comply with the rule; (2) the state actually enforced the rule against the petitioner; and (3) the rule is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim. *James v. Sheldon*, No. 1:17-CV-2095, 2021 WL 405522, at *4 (N.D. Ohio Feb. 5, 2021) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *Taylor v. McKee*, 649 F.3d 446, 450 (6th Cir. 2011)).

Kramer failed to comply with the filing requirements of Ohio Rev. Code § 2953.21; thus, satisfying the first factor of the *Maupin* test. The second *Maupin* factor was satisfied when the state appellate court denied Kramer's post-conviction petition for failing to meet the 365-day timely filing requirement of Ohio Rev. Code § 2953.21. (ECF No. 11-1 at Ex. 26, pp. 5-6). Finally, Kramer's failure to comply with the filing requirements of Ohio Rev. Code § 2953.21 constitutes an adequate and independent state ground on which Ohio can rely to foreclose review of a federal constitutional claim. *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998); *Mapes v. Coyle*, 171 F.3d 408, 421 (6th Cir. 1998). Accordingly, Grounds 16, 17, 18, 21, 22, 23, and 24 are procedurally defaulted.

Kramer asks this Court to excuse his procedural default for three reasons.  First, Kramer argues that his appellate counsel failed to accurately inform him of the date of the filing of the transcripts when he told Kramer that the transcripts were sent to the Court of Appeals on February 4, 2016. (ECF No. 34 at 58-59; *see* ECF No. 11-1, Ex. 24, PageID 562). According to Kramer, this meant that his post-conviction petition needed to be filed by February 4, 2017. (ECF No. 34 at 52).

Second, Kramer alleges that the trial court docket shows that the transcripts were filed in the trial court on October 23, 2015, but that the file was not sent to the court of appeals until February 4, 2016. (ECF No. 34 at 59). Third, Kramer asserts that he had been diligent in attempting to obtain the information/evidence needed to timely petition for post-conviction relief by filing four motions seeking the evidence with the trial court that were each denied as moot because his direct appeal had already been denied. (ECF No. 34 at 59). The Ohio Supreme Court had each of Kramer's reasons before it when it declined to extend jurisdiction.

Each of Kramer's arguments fail as they focus entirely on his failure to timely bring his petition for post-conviction relief.  Kramer incorrectly assumes that these grounds could have been properly raised in a post-conviction petition and fails to address his failure to timely bring these grounds on direct appeal. As discussed above, the Ohio doctrine of *res judicata* required Kramer to bring these claims on direct appeal and prevented Kramer from being able to raise these claims in a post-conviction petition.  Because Kramer failed to raise his claims on direct appeal and does not provide any cause for his failure, Kramer fails to establish cause for his procedural default.

Additionally, Kramer states that the Court should excuse his procedural default to prevent a fundamental miscarriage of justice. (ECF No. 34 at 59). As stated above, to demonstrate a fundamental miscarriage of justice, Kramer must support his claim with new reliable evidence. *Schlup*, 513 U.S. at 324. Kramer has failed to produce any new evidence that would demonstrate that no reasonable juror would have found him guilty. *Burks*, 2018 WL 7203231, at *2; *Connolly*, 304 F. App'x at 418 (6th Cir. 2008).

As such, Grounds 16-18, and 21-24 are procedurally defaulted.

**C.  Merits Review of Remaining Grounds**

    **1.  Ground 1 - Right to Self-Representation**

> Petitioner was denied the 6th Amendment Right, to self representation, [sic] which violated his 14th Amendment Right to Due Process, due to an abuse of discretion, by the Court.

During trial, Kramer became unhappy with the trial strategy being applied by his retained counsel during counsel's cross examination of one of state's witnesses. Kramer stood up and asked the court to allow him to terminate his retained counsel and represent himself, *pro se*. The trial court refused Kramer's request. Kramer raised the trial court's denial of his right to represent himself as his first assignment of error and proposition of law on direct review. (ECF No. 11-1 at Exs. 6 & 10). In addition to finding that Kramer's request was not "clear and unequivocal so as to trigger further inquiry by the trial court", the appellate court noted that:

> Kramer's self-representation request—which was made on the second day of trial—was untimely. *See Vrabel*, 99 Ohio St.3d 184, 2003-Ohio-3193, at ¶ 53, 790 N.E.2d 303 (holding "that the trial court did not abuse its discretion and properly refused appellant's request to represent himself after voir dire had been completed and on the first day that evidence was to be presented"); *Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, at ¶ 32, 772 N.E.2d 81 ("find[ing] that Cassano's request was untimely because it was made only three days before the trial was to start"); *Steele*, 155 Ohio App.3d 659, 2003-Ohio- 7103, at ¶ 20, 802 N.E.2d 1127 (concluding that "Steele's last-minute request on the day of trial was not timely made"); *Montgomery*, 2008-Ohio-6077, at ¶ 59 ("[B]ecause the request was made after the presentation of three witnesses, the self-representation request was untimely."); *State v. Lozada*, 8th Dist. Cuyahoga No. 94902, 2011-Ohio-823, ¶ 37 (concluding that "the inquiry * * * made on the day of trial" was untimely).

*State v. Kramer*, 2016-Ohio-2984; (ECF No. 11-1 at Ex.8).

"[A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409 (2000). The Warden argues that the "state court's rejection of this claim is neither an unreasonable application of, nor clearly contrary to, established Supreme Court precedent. 28 U.S.C. §2254(d). As such, it is entitled to AEDPA

deference, and must be dismissed." (ECF No. 11 at 36 (*citing Richter*, 562 U.S. at 103)). Kramer alleges that the appellate court unreasonably applied *Faretta v. California*, 422 U.S. 306 (1975) when it determined that the trial court did not err when it refused Kramer's request to proceed *pro se* without giving him a hearing (ECF No. 34 at 63).

In *Faretta*, the Supreme Court recognized a defendant's Sixth Amendment right to conduct his own defense. *Faretta* holds that the choice to represent oneself is "at once a choice to exercise an independent Sixth Amendment right, the right to represent oneself, and a choice to forgo another Sixth Amendment right, the right to counsel, and therefore is, in part, a waiver, and must be made knowingly, intelligently, and voluntarily." *Faretta*, 422 U.S. at 835. However, "[a]s the *Faretta* opinion recognized, the right to self-representation is not absolute." *Martinez v. Ct. of Appeal of Cal., Fourth App. Dist.*, 528 U.S. 152, 161 (2000). A defendant may forfeit his self-representation right if he does not assert it "in a timely manner." *Id.* at 162. This limitation reflects that "[e]ven at the trial level ... the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." *Id*. Thus, "if the right is asserted in an untimely manner, it may be deemed forfeited as a threshold matter." *Hill v. Curtin*, 792 F.3d 670, 677 (6th Cir. 2015).

However, "the U.S. Supreme Court has never held that a court must inquire into the basis of a defendant's request [to represent himself at trial] before denying it as untimely." *Hill*, 792 F.3d at 678. Instead, "the purpose of the [*Faretta*] inquiry is to inform the defendant of the hazards of self-representation, not to determine whether a request is timely. Habeas relief is not warranted on the ground that the trial court failed to conduct an inquiry." *Id*. The Sixth Circuit observed that while the *Faretta* Court did not establish a bright-line rule for timeliness, it explicitly stated that the defendant's request was "[w]ell before the date of trial," and "weeks before trial" in granting

it. *Id*. (quoting *Faretta*, 422 U.S. at 807, 835). "[T]o the extent that *Faretta* addresses timeliness, as a matter of clearly established law it can only be read to require a court to grant a self-representation request when the request occurs weeks before trial." *Id*. The Sixth Circuit then held that "in light of *Faretta*'s general standard and *Martinez*'s unequivocal pronouncement that the right to self-representation is 'not absolute' and observation that most courts find the right may be forfeited if not asserted 'in a timely manner,' the Michigan Supreme Court did not unreasonably apply clearly established federal law" in affirming the trial court's denial of the petitioner's request for self-representation made just as the trial was to begin. *Id*. at 680.

Here, Kramer moved to represent himself in the middle of his trial – well after *Faretta*'s "weeks before trial" standard. As the state appellate court concluded, the request was untimely and properly denied, even without a *Faretta* hearing. Accordingly, the state court's decision upholding the trial court's denial of Petitioner's request to represent himself was neither contrary to, nor an unreasonable application of, *Faretta* or any other clearly established Supreme Court precedent. This court recommends that Kramer's first ground for relief be dismissed.

### 2.  Grounds 3, 19, 20[5] - Ineffective Assistance of Trial Counsel

---

[5] GROUND THREE: Petitioner was denied the 6th Amendment right not only to Counsel, but the effective assistance of counsel, when the defense attorney, [John Thebes] refused to cross examine Pamela Addington and Detective Scott Campbell pertaining to the perjured testimony they both gave at trial. (*See* ECF No. 9-1 at 2, PageID 106).

GROUND NINETEEN: This Petitioner was denied the 6th Amendment Right under the U.S. Constitution that guarantees, not only Counsel, but the right to effective assistance of counsel, when trial counsel failed to produce the police inventory log sheets provided to him in discovery and use the records to impeach the perjured testimony, pertaining to the false amounts of heroin that were allegedly collected at the scene by the lead detective, Scott Campbell.

In Grounds 3, 19, and 20, Kramer asserts that he was denied his 6th Amendment right to effective assistance of counsel based on his trial counsel's conduct during trial: failing to impeach witness Pamela Addington; failing to impeach witness Detective Campbell; failing to use BCI log sheets to question the amount of heroin Detective Campbell asserted was provided by Kramer; and failing to introduce a photograph depicting the "bindle", or method used to transport the heroin.

The appellate court rejected Kramer's assertions of ineffective assistance of counsel under *Strickland*. *State v. Kramer*, 2016-Ohio-2984 at \*P58-\*P65; (ECF No. 11-1, Ex. 8). A habeas court must determine whether the petitioner has shown that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner. *Bell v. Cone*, 535 U.S. 685, 698-99, (2002) (citations omitted). The appellate court explained that

> Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675, 1998 Ohio 343, 693 N.E.2d 267 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558, 1995 Ohio 104, 651 N.E.2d 965 (1995). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989), quoting *State v. Lytle*, 48 Ohio St.2d 391, 396, 358 N.E.2d 623 (1976). In the event of deficient or unreasonable performance, prejudice results when "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id*. at 142, quoting *Strickland* at 694. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id*., quoting *Strickland* at 694.

*State v. Kramer*, 2016-Ohio-2984 at \*P59.

---

GROUND TWENTY: This Petitioner was denied the 6th Amendment Right under the U.S. Constitution that guarantees, not only Counsel, but the right to effective assistance of counsel, by trial counsel failing to produce a picture of the package used to transport heroin to the victim that was marked under the special designation "Counsel Only" that multiple witnesses for the prosecution said was not recovered from the scene.

With respect to Kramer's claim that his trial counsel was ineffective for not cross examining Pamela Addington, the court stated: "Kramer argues that [Addington] 'made pre-trial statements that are contrary to statements that she made at trial' and this 'goes directly to witness credibility.' [ ] Kramer, however, fails to inform us of the content of either statement—either Addington's trial testimony or the pretrial statement that supposedly contradicted it." *State v. Kramer*, 2016-Ohio-2984 at *P62.

Here, Kramer supports his argument by asserting that Addington testified on direct that she was unaware that the victim (her son) had a drug problem. Kramer's counsel declined to cross examine Addington on her knowledge of the victim's drug issue. Kramer argues that his counsel should have had information from medical records from one of the victim's prior drug overdoses. This record reportedly listed Addington as a medical contact and showing that she "gave the hospital permission to transfer and treat the victim for that overdose[.]" (ECF No. 34 at 93). Kramer argues that his counsel never obtained the information from his previous counsel. Additionally, Kramer argues – for the first time – that Addington had told the coroner that the victim had been looking for heroin the day before his death and that he had overdosed in 2012. (ECF No. 34 at 94).

When assessing whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1), the reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits," *Pinholster*, 563 U.S. at 181. Kramer acknowledges these facts were not presented to the court on direct appeal nor in his application to reopen the appeal. (*See* ECF No. 34 at 88, 94). Kramer requested that the appellate court reconsider its decision, including the information regarding Addington's previous inconsistent statements. (*See* ECF No. 19-1). The appellate court

denied Kramer's motion for reconsideration as untimely since it was not filed "within 10 days after the Clerk mailed the final judgment and there is no showing of extraordinary circumstance supporting an enlargement of time to file the motion." (ECF No. 11-1 at Ex. 14).[6] Accordingly, this court is limited to the record that was before the state appellate court on direct appeal, which is the last court to adjudicate the claim on the merits. *Pinholster*, 563 U.S. at 181.

Although failure to cross-examine a witness with readily available impeachment evidence at times may be an objectively unreasonable, *see Peoples v. Lafler*, 734 F.3d 503, 514 (6th Cir. 2013), this Court cannot say that about trial counsel's decision not to cross-examine Addington on her knowledge about her son's drug habit. Addington's testimony on direct examination provided the decedent's date of birth, residence, his familial status – father of two, the identity of the children's mother – Nicole Wade, how and when Addington learned of her son's death, the last time she saw her son, and the admission of a photo of the decedent and his children. (ECF No. 12-1, PageID 886-893). The prosecutor also asked Addington whether she was aware of her son's substance abuse problem, to which she responded that she was unaware. (ECF No. 12-1, PageID 889). Nothing suggests that the state's evidence against Kramer hinged on Addington's testimony, and trial counsel's defense strategy was not merely to cast doubt on the credibility of the witnesses. (*See Peoples,* 734 F.3d at 513). Accordingly, counsel's decision not to cross-examine Addington was not "objectively unreasonable". Moreover, Kramer has not demonstrated that he was

---

[6] The appellate court also stated that "even if considered timely, the motion fails to raise any error in the decision or any issue not properly considered in the first instance." (ECF No. 11-1, Ex. 14 (citing *Garfield Hts. City School Dist. v. State Bd. of Edn.*, 85 Ohio App.3d 117 (1992); and *Columbus v. Hodge*, 37 Ohio App.3d 68 (1987)).

prejudiced by this decision. Accordingly, the appellate court decision was not an unreasonable application of *Strickland*.[7]

With respect to trial counsel's cross-examination of Detective Campbell, the appellate court found that Kramer's trial counsel had not performed deficiently or unreasonably in adhering to the defense strategy of the case, which was that someone other than Kramer had provided the heroin to the decedent. Specifically, the appellate court stated:

> As to Campbell, Kramer argues, "The defendant believes that Detective Campbell made statements that were inconsistent with evidence log sheets and BCI lab reports." (*Id*.). Once again, Kramer fails to identify the supposed inconsistent statements that he believes Campbell made. "Without specifically identifying in the record the alleged prior inconsistent statements, and without explaining how those statements likely would have changed the result of the trial, appellant has not shown ineffective assistance of counsel." *State v. Williams*, 10th Dist. Franklin No. 08AP-719, 2009-Ohio-3237, ¶ 33. See also App.R. 12(A)(2).
>
> Kramer also argues, "[T]he defendant believes that a picture of a 'bindle' was provided in 'counsel only' materials yet was not introduced to contradict Detective Campbell's testimony that there was no bindle found." (Appellant's Brief at 8). Again, Kramer's trial strategy was to dispute that he provided to Matney the heroin that caused his death. Kramer apparently believed that the absence of a bindle paper at the scene of Matney's death would support his position that he did not sell Matney heroin on December 26 or 27, 2013. Indeed, in arguing *on appeal* that his conviction is against the manifest weight of the evidence, Kramer offers as support that law enforcement officers found no bindle paper at Matney's residence. Accordingly, even assuming the existence of a "picture of a 'bindle,'" Kramer's trial counsel did not perform deficiently or unreasonably in adhering to the defense's theory of the case and not eliciting evidence that the defense believed contradicted that theory. *See State v. Vielma*, 3d Dist. Paulding No. 11-11-03, 2012-Ohio-875, ¶ 49; *State v. Foster*, 2d Dist. Montgomery No. 25655, 2014-Ohio-530, ¶ 15. This is a matter of trial strategy. *Id.*; *Id.* Moreover,

---

[7] The court notes that the outcome would be the same if the additional information was considered because Kramer has not demonstrated how impeaching the victim's mother's credibility as to her knowledge of her son's drug habit results in the reasonable probability that the result of the proceeding would have been different.

> considering Kramer's argument under his third assignment of error that the absence of a bindle paper weighs *against* his conviction, he cannot argue that the result of the proceeding would have been different. *See Vielma* at ¶ 49.

*State v. Kramer*, *P62-*P63. Kramer argues that the decision was an "unreasonable determination" and misapplication of *Strickland.* Detective Campbell testified that no bindle was found at the scene. Kramer argues that the bindle is present in a photograph given to defense counsel in discovery and that its existence was a crucial fact about which his trial counsel failed to cross-examine Detective Campbell. Kramer also alleges that his counsel's representation was objectively unreasonably in that he failed to impeach Detective Campbell's testimony that the syringe found at the scene was sent to BCI for testing. Kramer alleges that "the lab report received in discovery does not show BCI as receiving, or testing any syringe. [sic]" (ECF No. 34 at 107).[8]

Kramer has failed to show that his counsel's performance fell below an objective standard of reasonableness. After reviewing the appellate court's decision, this court concludes that the appellate court applied federal law reasonably. As the appellate court recognized, Kramer's defense was that he did not sell the decedent the lethal dose of heroin. His defense strategy focused on his alibi on the date of the event – even conceding the cause of death. There was no need for trial counsel to challenge Detective Campbell's statement about the non-existence of a bindle nor whether the syringe found at the scene was tested by BCI as these facts were not relevant to the defense. "Strategic choices by counsel, while not necessarily those a federal judge in hindsight might make, do not rise to the level of a Sixth Amendment violation." *McMeans*, 228 F.3d at 682

---

[8] Kramer also argues that the bindle may have contained "exculpatory DNA or fingerprint evidence". However, he failed to make this argument on appeal and has not argued that this procedural default should be waived. Although Kramer alluded to this argument in his motion for reconsideration (ECF No. 19-1 at 10), as explained above, the appellate court properly determined that his application was untimely.

(citing *Jones v. Barnes*, 463 U.S. 745, 750–54 (1983)). Here, defense counsel may have reasonably chosen to avoid an approach that unnecessarily impeached a witness on information that was not critical to the chosen defense. The appellate court properly noted that Detective Campbell's testimony had no bearing on Petitioner's alibi defense. Though impeachment could have damaged the witness's credibility, failure to impeach did not harm Petitioner's case. Declining to impeach a witness when doing so amounts to mere trial strategy does not constitute an objectively unreasonable choice. *Tackett v. Trierweiler*, 956 F.3d 358, 374–75 (6th Cir. 2020) "A trial counsel's 'tactical decisions are particularly difficult to attack,' meaning that a defendant 'attacking his lawyer's performance must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Id.* (quoting *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994) (citation omitted)). Here, Kramer fails to demonstrate that the decision to forego impeaching Detective Campbell was such a serious error as to signify that his "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* (quoting *Strickland*, 466 U.S. at 687). In these circumstances, Kramer cannot demonstrate that the appellate court unreasonably determined that counsel's performance was not deficient.

Having determined that Kramer failed to demonstrate that his trial counsel was ineffective under the first prong of *Strickland*, the Court need not examine whether counsel's performance prejudiced him under the second prong.

This Court recommends that Grounds 3, 19, and 20 be dismissed.

### 3. Ground 4 – Ineffective Assistance of Appellate Counsel

Kramer's fourth ground asserts that his appellate counsel was ineffective for failing to raise "significant winning errors" on appeal, including the State's withholding of the lab results from the syringe/murder weapon, and failing to raise prosecutorial misconduct for the State's knowingly

supporting "perjured" testimony and then vouching for the same perjured testimony in closing argument. The state court's reasonable rejection of these issues is entitled to AEDPA deference. 28 U.S.C. §2254(d)(1). *Harrington*, 562 U.S. at 103.

The Ohio Court of Appeals addressed Kramer's claim that his appellate counsel was ineffective in its denial of his motion to reopen the appeal. (ECF No. 11-1 at Ex 14). The court found "that the additional issues raised in Appellant's application fail to show any genuine issue as to whether he was deprived of the effective assistance of counsel on appeal." (ECF No. 11-1 at Ex 14 (citing Ohio App. R. 26(B)(5); *State v. Reed*, 74 Ohio St.3d 534 (1996) (applying the analysis of *Strickland*, 466 U.S. 668); *State v. Bradley*, 42 Ohio St.3d 136 (1989))). The court then found that Kramer had failed to show that appellate counsel's performance fell below an objective standard of reasonable representation or that there is any reasonable probability the result would be different were it not for the appellate counsel's purported errors. (ECF No. 11-1 at Ex 14).

This Court agrees with the Ohio Court of Appeals.

A habeas court "assess[es] the strength of the claim appellate counsel failed to raise." *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). "Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland* 356 F.3d at 699, citing *Greer*, 264 F.3d at 676; *see also McMeans*, 228 F.3d at 682. "If there is a reasonable probability that [the defendant] would have prevailed on appeal had the claim been raised, we can then consider whether the claim's merit was so compelling that appellate counsel's failure to raise it amounted to ineffective assistance of appellate counsel." *McFarland*, 356 F.3d at 700. Thus, a claim appellate counsel could have, but did not, raise cannot form the basis of an ineffective assistance of counsel claim unless the claim had a reasonable probability of success at the time it could have been raised to

40

have changed the result of the appeal. *Id.* at 699-700. Appellate counsel cannot be ineffective for failing to raise an issue that lacks merit. *Moore*, 708 F.3d at 776 (citing *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008)); *Greer*, 264 F.3d at 676.

Ground 4 alleges that his appellate counsel was ineffective for failing to raise the issues set forth in Grounds 5, 6, 7, 8, and 10. As explained above, Kramer cannot demonstrate that these claims had a reasonable probability of success to have changed the result of the appeal. Accordingly, appellate counsel was not ineffective for failing to raise the issues on direct appeal.

This court recommends that Kramer's fourth ground for relief be dismissed.

### 4. Ground 9 – Manifest Weight

In Ground 9, Kramer asserts that his conviction was against the manifest weight of the evidence and violated his 5th and 14th Amendment rights to due process. The Commissioner is correct that Ground 9 does not state a cognizable claim for federal habeas review because a manifest-weight-of-the-evidence claim is a matter of state law. *See Nash v. Eberlin*, 258 F. App'x 761, 764 n.4 (6th Cir. 2007). However, "courts often consider a manifest-weight-of-the-evidence claim in a § 2254 petition to allege an insufficient-evidence claim, particularly when, as here, the petitioner is *pro se*." *Hoffman v. Lazaroff*, No. 18-3439, 2018 WL 5849894, at *3 (6th Cir. Sept. 17, 2018) (citing *Nash*, 258 F. App'x at 764 n.4). Kramer did not attempt to allege an insufficient-evidence claim in response to the Commissioner's Return of Writ; instead, he specifically waived any argument as to Ground 9. (*See* ECF No. 34 at 30). However, the Court will analyze this claim below as Petitioner is not required to provide argument and he did not stipulate to the dismissal of this claim. *See Pryor v. Miller*, No. 5:15CV932, 2017 WL 5632876 (N.D. Ohio Oct. 26, 2017), *report and recommendation adopted*, No. 5:15 CV 932, 2017 WL 5614471 (N.D. Ohio Nov. 21, 2017) (analyzing petitioner's grounds raised in petition for habeas despite petitioner failing to file

a traverse); *Perry v. Lazaroff*, No. 1:16CV225, 2016 WL 8674485 (N.D. Ohio Nov. 4, 2016), *report and recommendation adopted*, No. 1:16CR225, 2017 WL 1251635 (N.D. Ohio Apr. 5, 2017) (same).

Even construing Kramer's manifest weight claim as a sufficiency of the evidence claim, it fails on the merits.[9] The Due Process clause of the 14th Amendment requires that a criminal conviction be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the offense charged. *In re Winship*, 397 U.S. 358, 363–64 (1970); *Nash*, 258 F. App'x at 765 (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) ("A conviction is not supported by sufficient evidence if a rational trier of fact could not have found the essential elements of the crime beyond a reasonable doubt."). A habeas court is "not allowed to conduct a de novo review of the Ohio state court's application of that rule. Instead, we must review its sufficiency of the evidence decision under the highly deferential standard set by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")." *Id.* Kramer can only be granted habeas relief if the Ohio Court of Appeals made an unreasonable application of the *Jackson* standard. *Id.* (citing 28 U.S.C. § 2254(d)(1); *Getsy v. Mitchell*, 495 F.3d 295, 315–316 (6th Cir.2007) (en banc)). In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses. *See Jackson*, 443 U.S. at 371; *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983). Moreover, federal courts are required to give deference to factual determinations made in state court and "[a]ny conflicting inferences arising from the record ... should be resolved in favor of the prosecution." *Heinish v. Tate*, 9 F.3d 1548,

---

[9] The Court finds that Kramer did not procedurally default on his sufficiency of the evidence claim because "the sufficiency of the evidence issue was adequately passed upon by the Ohio courts because the determination by the Ohio Court of Appeals that the conviction was supported by the manifest weight of the evidence necessarily implies a finding that there was sufficient evidence." *Nash*, 258 F. App'x at 765.

1993 WL 460782 (6th Cir.1993) (unpublished opinion), *citing Walker*, 703 F.3d at 969–70; *Wright v. West*, 505 U.S. 277, 296 (1992) (the deference owed to the trier of fact limits the nature of constitutional sufficiency review.).

Here, a jury convicted Kramer of involuntary manslaughter in that he proximately caused the death of another by committing or attempting to commit the felony offense of trafficking in heroin. Construing all evidence in a light favorable to the prosecution, Kramer has not shown the evidence insufficient to convict him. The only element of involuntary manslaughter that Kramer attacked on direct appeal is the jury's finding that he had provided the heroin to decedent. Thus, this is the only element of his conviction that Kramer has "fairly presented" in state courts, and the only element considered here. The evidence supporting the jury's finding that Kramer supplied the heroin to the decedent included the cell-phone communications between Kramer and decedent, which appeared to set up a transaction of heroin; the evidence indicating Kramer's cell phone could have been at or near decedent's residence the night of his death; the evidence that Kramer could not have been at his alibi address at 12:06 AM on December 27, 2013; testimony from a witness who heard the decedent speaking with someone while she was on the phone with him at 12:08 AM; and Kramer's admission that he sold decedent heroin in the past. The evidence 1) places Kramer at or near the decedent's address on the night of his death; 2) shows that Kramer had sold heroin to the decedent in the past; and 3) appeared to be setting up a sale that night. Accordingly, Kramer's claim of insufficiency of the evidence to support his conviction has no merit.

Accordingly, this Court recommends that Ground 9 be dismissed.

## VI.    Recommendation

For the reasons explained above, the undersigned recommends that the Petition be DENIED.


Dated: March 8, 2021

*Carmen E. Henderson*
**Carmen E. Henderson**
**United States Magistrate Judge**

---

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).